**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
:
RONALD LICKTEIG,                                     :    Civ. No.
:
                        Plaintiff,        :    **COMPLAINT**
:
     - against -                              :
:
CERBERUS CAPITAL MANAGEMENT, L.P., COVIS   :
PHARMACEUTICALS, INC., COVIS MANAGEMENT    :
INVESTORS LLC, COVIS HOLDINGS, L.P., and   :
DEAN MITCHELL,                             :
:
                        Defendants.       :
:
------------------------------------------------------------------x

Plaintiff Ronald Lickteig ("Lickteig"), for his complaint against Cerberus Capital Management, L.P. ("Cerberus"), Covis Pharmaceuticals, Inc. ("Covis Pharma"), Covis Management Investors LLC ("Covis Management"), Covis Holdings, L.P. ("Covis Holdings") and Dean Mitchell ("Mitchell," and, together with Cerberus, Covis Pharma, Covis Management and Covis Holdings, the "Defendants"), respectfully alleges as follows:

## INTRODUCTION

1. This action arises out of a securities fraud that Defendants perpetrated against Ronald Lickteig to induce him to sell his valuable profit interests in Covis Holdings for grossly inadequate consideration.

2. In 2011, Covis Holdings was a startup company that Cerberus had created to invest in cardiovascular, central nervous system and acute care pharmaceutical products. As part of this venture, Cerberus and Covis Holdings planned to purchase certain pharmaceutical products from GlaxoSmithKline.

3. Lickteig was a former executive at GlaxoSmithKline, and thus had extensive experience selling the very products that Cerberus and Covis Holdings planned to acquire. Cerberus and Covis Holdings therefore recruited Lickteig to serve as the General Manager of the entity that would sell these products in the United States—Covis Pharma.

4. Lickteig joined Covis Pharma in December 2011, and agreed to assign certain intellectual property interests to another Covis Holdings subsidiary, non-party Covis Pharma S.á.r.l. In exchange, Lickteig received the right to participate in the future increase in value of Covis Holdings through profit interests in yet another affiliate of Covis Holdings—Covis Management. Lickteig's agreement with Covis Management gave him a put option that required Covis Management to purchase Lickteig's profit interests if and when he left Covis Pharma, provided that his termination was not for cause.

5. In June 2014, Lickteig voluntarily resigned from Covis Pharma and exercised his put option. Pursuant to the relevant agreements, Covis Management was required to assess the fair market value of Lickteig's profit interests, using all relevant information, and provide that valuation to Lickteig.

6. Lickteig, who had no means to verify Defendants' representations, relied on Defendants to provide him with accurate information regarding the value of his profit interests. Rather than do so, however, Defendants knowingly understated the value of Covis Holdings by misrepresenting its past and future earnings and by applying an earnings multiple that fell far below what Defendants' own executives privately considered to be reasonable. Defendants also failed to disclose their own internal valuations of the commercial rights of the pharmaceutical products in question, which far exceeded the valuation that Defendants provided to Lickteig during the same time period.

7. As a result of these misrepresentations and omissions of material fact, Defendants fraudulently induced Lickteig to agree to sell his profit interests for far less than they were actually worth, causing him millions of dollars in damages.

8. Separately and independently, Defendants also deliberately concealed from Lickteig that, at the same time that Defendants were negotiating with Lickteig, they were also accelerating their efforts to sell Covis Holdings (or its assets) to third parties. It was critical to Defendants that Lickteig not learn of this development, which would have alerted him to the fact that Defendants' valuation was in fact far too low. Indeed, just one day after Lickteig agreed in principal to the sale price for his profit interests—but well before the parties finalized their agreement—one of Defendants' executives privately noted that "there may be an interest offer coming quickly" and expressed hope that "negotiations w[ith] former mgmt has concluded." Defendants never informed Lickteig of these facts, and he subsequently agreed to sell his profit interests with no knowledge of these negotiations.

9. Mere months later, Defendants announced a definitive agreement to sell substantially all of their pharmaceutical assets to a third party buyer for $1.2 billion—an amount that was more than twice what Defendants had told Lickteig was the total enterprise value of Covis Holdings. Lickteig received no benefits from this sale. Defendants, by contrast, profited handsomely, including with respect to the profit interest that they had induced Lickteig to sell to them at an artificially low valuation.

**THE PARTIES**

10. Plaintiff Ronald Lickteig is an individual who has resided at all relevant times in Johnston, Iowa. Lickteig was employed as General Manager, Acute Care, at Covis

Pharmaceuticals Inc. (as defined above, "Covis Pharma") from January 2012 until he resigned effective June 6, 2014.

11. On information and belief, defendant Cerberus Capital Management, L.P. (as defined above, "Cerberus") is a Delaware limited liability partnership with its principal place of business in New York, New York.

12. On information and belief, defendant Covis Holdings, L.P. (as defined above, "Covis Holdings") is a limited partnership registered in the Cayman Islands.

13. On information and belief, defendant Covis Pharmaceuticals, Inc. (as defined above, "Covis Pharma") is a Delaware corporation with its principal place of business in Cary, North Carolina. On further information and belief, Covis Pharma was a subsidiary of Covis Holdings at all relevant times.

14. On information and belief, defendant Covis Management Investors LLC (as defined above, "Covis Management") is a limited liability company organized pursuant to the Delaware Limited Liability Company Act.

15. On information and belief, defendant Dean Mitchell was, at all relevant times, Chairman of the Board for non-party Covis Pharma S.á.r.l.

16. On information and belief, non-party Covis Pharma S.á.r.l. ("Covis S.á.r.l.") is a company organized under the laws of Switzerland. On further information and belief, Covis S.á.r.l. was an indirect wholly owned subsidiary of Covis Holdings at all relevant times.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over Covis Pharma, Covis Management and Covis Holdings because they each consented to the sole and exclusive jurisdiction of the federal and state courts of New York in connection with various agreements with Lickteig related to

4

this dispute. This Court has personal jurisdiction over Mitchell because, among other reasons, he acted as the agent for the other Defendants in connection with negotiating at least one of those agreements.

18. This Court has personal jurisdiction over Cerberus because its principal place of business is located in New York, and because, upon information and belief, Cerberus directly or indirectly controls each of Covis Holdings, Covis Pharma and Covis Management.

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78aa.

20. This Court has supplemental jurisdiction over Lickteig's state law claims under 28 U.S.C. § 1367(a).

21. Venue is proper in this Court pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391 because the parties consented to jurisdiction of the federal and state courts of New York.

## FACTS

**A.  Cerberus Creates Covis Holdings**

22. In or about the fall of 2011, Cerberus formed Covis Holdings to acquire certain pharmaceutical products from GlaxoSmithKline ("GSK"). After that transaction closed, the commercial rights to the products in question would be held by non-party Covis S.á.r.l., an indirect wholly owned subsidiary of Covis Holdings. Covis Pharma, which was another wholly owned subsidiary of Covis Holdings and an affiliate of Covis S.á.r.l., would distribute those products in the United States. Cerberus also formed Covis Management, which in turn would issue membership interests to various parties. These membership interests would entitle the holders of such interests to participate in the increase in value of Covis Holdings.

23. Cerberus effectively owned and controlled each of the Covis entities. For example, Cerberus was the general partner of Covis Holdings and deployed its own agents to oversee operations at both Covis Pharma and Covis S.á.r.l. Furthermore, Covis agents or executives comprised the majority of the board of managers at both Covis Holdings and Covis Management. Cerberus, Covis Holdings, Covis Pharma, Covis Management and Covis S.á.r.l. were thus a fully integrated entity.

**B.   Lickteig Joins Covis Pharma and Receives Profit Interests in Covis Holdings**

24. Lickteig had previously served as national accounts director at GSK, and therefore had extensive experience selling the products that Cerberus and Covis Holdings planned to acquire. Seeking to gain the benefit of Lickteig's extensive experience, relationships and knowledge, Cerberus and Covis Holdings offered Lickteig a job as General Manager, Acute Care, at Covis Pharma.

25. Lickteig entered into an employment agreement with Covis Pharma on December 19, 2011. At or about the same time, Lickteig and defendants Covis Holdings and Covis Management executed a contribution agreement dated as of December 22, 2011 (the "Contribution Agreement"). Under the Contribution Agreement, Covis Management issued Lickteig profit interests equal to 200,000 Class B Partnership Interests in Covis Management (the "Profit Interests"). These Profit Interests were intended to enable Lickteig to participate in the increase in value of Covis Holdings (and, indirectly, in Covis S.á.r.l.), and represented two percent of the fully diluted equity interests in Covis Holdings. In exchange, Lickteig assigned certain intellectual property rights to Covis S.á.r.l. and agreed to provide services to Defendants after the transaction with GSK closed.

26. Under paragraph 4(b) of Exhibit A to the Contribution Agreement, Lickteig had an option to require Covis Management to purchase all of his vested Profit Interests if his

employment with Covis Pharma was terminated other than for cause (the "Put Option"). Pursuant to the terms of the Contribution Agreement, 90,000 of Lickteig's Profit Interests vested upon the closing of the Contribution Agreement. An additional 10,000 would vest in equal installments of 2,500 over a four-year period as of the anniversary date of the closing. The remaining 100,000 would vest only upon the occurrence of certain winding up events, which included a sale of Covis Holdings or substantially all of its assets.

**C.  Defendants Value Lickteig's Profit Interests**

27.  From January 1, 2012 until June 2014, Lickteig served as the General Manager of Covis Pharma's Acute Care division. Lickteig met or exceeded expectations in each year that he worked at Covis Pharma. In his first year, the performance of Lickteig's division exceeded company forecasts by 23 percent. Lickteig's strong performance continued through his second year as well. As a direct result of Lickteig's efforts, as well as the efforts of Defendants' other managers and employees, the value of Covis Holdings' increased dramatically.

28.  On or about June 6, 2014, Lickteig voluntarily resigned from Covis Pharma. Three days later, Lickteig exercised the Put Option in accordance with the terms of the Contribution Agreement. At the time of his resignation, Lickteig held 95,000 vested Profit Interests.

29.  Under paragraph 4(a) of Exhibit A to the Contribution Agreement, Covis Management was required to purchase Lickteig's Profit Interests at the "Fair Market Value of such interests as of" Lickteig's termination date—*i.e.*, June 6, 2014. "Fair Market Value" was defined in Covis Management's Amended and Restated Limited Liability Company Agreement to mean "the fair market value of such Profits Interest, asset or liability, as determined in good

faith by the Board of Managers, taking into account all relevant factors, including without limitation the most recent valuation, prior to such determination, of the Company and/or its equity interests."

30. In or about July 2014, Dean Mitchell, acting on behalf of the other Defendants, reached out to Lickteig with respect to Lickteig's exercise of this Put Option. On or about July 12, 2014, Mitchell provided a written valuation to Lickteig—copying Alex Benjamin, an in-house attorney for Cerberus—which purported to value Lickteig's Profit Interests at $1.1 million (the "Valuation"):

**Ron Lickteig**
$ in MM, unless otherwise noted

| | | |
|---|---|---|
| **2013 Adjusted EBITDA** | $ | 62.2 |
| TEV/EBITDA Multiple | | 7.5x |
| TEV | $ | 466.7 |
| Memo: 2014 Adjusted EBITDA | $ | 68.5 |
| Memo: Implied 2014 EBITDA Multiple | | 6.8x |
| | | |
| Net Debt as of 3/31/2014 | $ | 139.5 |
| Class A Preferred as of 3/31/14 | | 138.4 |
| **Total Common Equity (control, marketable)** | $ | 188.8 |
| | | |
| Non-marketable / Non-control Discount | | 15.0% |
| **Common Equity** | $ | 160.5 |

**Ron Lickteig's Interests**
| | |
|---|---|
| Ron's Vested Interests | 95,000 |
| Total Interests | 13,585,714 |
| % of Total Common Interests | 0.699% |
| **Ron Licketeig's Interests ($ in MM)** | $ 1.1 |

**Ron's Vesting Schedule:**

| Date | Vested % | Vested Amount |
|---|---|---|
| 12/23/2011 | 90.000% | 90,000 |
| 12/23/2012 | 92.500% | 92,500 |
| 12/23/2013 | 95.000% | 95,000 |
| 12/23/2014 | 97.500% | 97,500 |
| 12/23/2015 | 100.000% | 100,000 |

8

31. As shown by the Valuation, Mitchell represented that the total enterprise value ("TEV") of Covis Holdings was $466.7 million. Mitchell based this TEV on two metrics. First, Mitchell multiplied Covis Holding's purported "2013 Adjusted EBITDA"—which he represented was $62.2 million—by a "TEV/EBITDA Multiple" of 7.5. Second, Mitchell multiplied Covis Holding's purported "2014 Adjusted EBITDA"—which he represented was $68.5 million—by an "[i]mplied 2014 EBITDA Multiple" of 6.8.

32. To calculate the value of Lickteig's Profit Interests, Mitchell then subtracted Covis Holding's net debt as well as the value of its Class A preferred shares as of March 31, 2014 to arrive at a total common equity amount of $188,800,000. Mitchell next applied a 15 percent marketability discount and multiplied that amount by Lickteig's total ownership percentage in Covis Holdings, which resulted in a $1.1 million valuation of Lickteig's Profit Interests.

33. When Lickteig exercised his Put Option, he had sought to retain a portion of his vested Profit Interests even though, as Lickteig acknowledged, the Contribution Agreement required him to sell all of his vested interests at once. Defendants rejected Lickteig's request, but offered to pay Lickteig $1.3 million in exchange for his Profit Interests.

34. On July 22, 2014, Lickteig agreed in principal sell his Profit Interests for $1.3 million. In doing so, he relied on Defendants' representations and Valuation, which he believed were accurate and complete.

35. The Contribution Agreement provided that Covis Management (which had issued the Profit Interests to Lickteig) would purchase those interests upon Lickteig's exercise of his Put Option. Demonstrating the integrated nature of the various corporate entities, however, Defendants subsequently provided a Separation and General Release Agreement to

Lickteig, which provided that Covis Holdings itself would pay Lickteig for his Profit Interests. Lickteig, who was still acting in reliance on the accuracy of Defendants' prior representations and Valuation, signed the Separation Agreement on August 11, 2014.

36. Lickteig received payment for his Profit Interests in September 2014. Defendants did not gross up Lickteig's payment to account for taxes.

**D.     Defendants' Valuation Is Materially Misleading**

37. Lickteig was not privy to Covis Holdings' financial statements, budgets or projections, and thus had no means to verify the adjusted EBITDA figures that Mitchell provided in the Valuation. Nor did he have any ability to assess any other factors that might impact the value of his interests. Accordingly, he had no choice but to rely on Defendants to provide him honest, accurate and complete information in connection with the Valuation. Defendants' Valuation, however, contained numerous false statements or omissions of material facts. Taken alone or together, these material misstatements and omissions caused the Valuation of Lickteig's Profit Interests to be grossly understated.

38. As an initial matter, Defendants knew that the estimated 2014 Adjusted EBITDA of $68.5 million that they provided to Lickteig in the Valuation—which Defendants used to estimate the TEV of Covis Holdings—was grossly understated. The majority of value in Covis Holdings was held by Covis S.á.r.l., which Covis Holdings owned through an intermediate holding company, Covis Pharma Holdings S.á.r.l. In a PowerPoint deck prepared for a July 29, 2014 meeting of Covis Pharma Holdings S.á.r.l.'s board of directors, Defendants' management indicated that Covis Holdings had achieved adjusted EBITDA of $51.8 million in just the first two quarters of 2014. The presentation further stated that this adjusted EBITDA was $18.4 million ahead of the 2014 annual plan of $33.5 million. The presentation, which

10

listed Mitchell as well as various Cerberus representatives as attendees, further noted that the company had "cash on hand of $63.4mm and total liquidity of $98.4mm inclusive of $35.0mm undrawn revolving."

39. This presentation was prepared in the same month that Mitchell provided the Valuation to Lickteig, and before Defendants finalized their agreement with Lickteig. Yet Defendants never disclosed these facts to Lickteig.

40. Defendants also misrepresented other key facts that artificially depressed the valuation of Lickteig's Profit Interests. For example, on information and belief, in June 2014, Defendants valued the pharmaceutical products acquired from GSK at $750 million to $1 billion, which would have implied a far greater TEV than the $466 million provided in the Valuation. On further information and belief, Covis Holdings' actual adjusted EBITDA for 2013 was millions of dollars higher than the $62.2 million reported to Lickteig in the Valuation.

41. Finally, Defendants also misrepresented what they believed to be the appropriate EBITDA multiple for Covis Holdings. In the Valuation, Defendants stated that the proper multiples were 7.5 times EBITDA in 2013 and 6.8 times EBITDA in 2014. Privately, however, Mitchell told a colleague in October 2014 that a "reasonable multiple" for Covis Holdings would be "8-12X" EBITDA, which was above either of the multiples that Mitchell had provided to Lickteig in the Valuation.

42. Lickteig did not know—and had no reason to know—of these material misrepresentations or omissions at the time he agreed to the buyout price for his Profit Interests. Nor did he have any means to assess the accuracy of the information that Defendants provided to him. But for Defendants' misrepresentations and omissions, Lickteig would not have agreed to sell his Profit Interest for $1.3 million.

### E. Defendants Conceal Additional Material Facts from Lickteig

43. In addition to misrepresenting the value of the Profit Interests, Defendants also failed to inform Lickteig they were actively engaged in discussions to sell Covis Holdings or its pharmaceutical assets for substantially more than the TEV that they provided to Lickteig in the Valuation.

44. On July 23, 2014—just one day after Lickteig agreed in principal to the sale price of his Profit Interests, but before he signed the Separation Agreement—Jim Lenehan, the chairman of the board of directors of Covis Pharma and a Cerberus appointee, informed Brett Ingersoll, a Cerberus employee, that "there may be an interesting offer coming quickly."

45. Demonstrating that Defendants' management knew that this fact was relevant to the valuation of Lickteig's Profit Interests, Lenehan added that "hopefully negotiations w[ith] former mgmt has concluded."

46. Of course, Lickteig had not finalized his agreement by this point, but Defendants still did not inform Lickteig of this development.

47. Defendants also concealed other material facts from Lickteig concerning a potential sale of Covis Holdings and the overall value of the enterprise. For example, on information and belief, in July 2014, a potential purchaser valued Covis Holding's assets at $950 million. On further information and belief, Defendants' management prepared a board presentation in July 2014 reporting that two bidders were heavily engaged to purchase Covis Holdings. And on August 7, 2014, Mitchell sent an internal email entitled "Acquisition Update" in which he confirmed that Defendants expected an offer "by the end of this or early next week," and "will need to move quickly if [the buyer] plan[s] to provide a compelling

offer." None of this was disclosed to Lickteig, who still had yet to execute his agreement to sell his Profit Interests at the time of these events.

48. After Lickteig signed his separation agreement, Defendants continued to pursue a sale, targeting a valuation of more than $1 billion. On February 12, 2015, Covis executed a letter of intent to sell substantially all of its assets to Concordia Healthcare, Inc. ("Concordia"). On March 9, 2015, Defendants publicly announced that Concordia had purchased substantially all of Defendants' assets for $1.2 billion. As a result, Cerberus and Defendants' other private equity investors received over $1 billion. Lickteig, by contrast, received nothing.

49. If Lickteig had been aware of these facts, he would not have agreed to sell his Profit Interests for $1.3 million.

## FIRST CAUSE OF ACTION
### For Violations of § 10(b) of the Exchange Act and Rule 10b-5
*Against All Defendants*

50. Lickteig repeats and realleges the preceding paragraphs of his Complaint as if fully set forth herein.

51. The Profit Interests are securities within the meaning of the Exchange Act.

52. Defendants intentionally and knowingly made material misstatements and omissions to Lickteig concerning the value of his Profit Interests by, among other things:

    a. Misrepresenting Covis Holdings' estimated adjusted EBITDA for 2014;

    b. On information and belief, failing to disclose that, in June 2014, Defendants valued Covis Holdings' pharmaceutical products at $750 million to $1 billion—far higher than the TEV that Defendants represented to Lickteig;

    c. On information and belief, materially misrepresenting Covis Holdings' actual adjusted EBITDA for 2013;

      d.      Misrepresenting the appropriate EBITDA multiple to apply to Covis Holdings for purposes of the Valuation; and

      e.      Omitting material facts concerning Defendants' likely sale of Covis Holdings or its assets.

53.    On information and belief, Defendants made these misrepresentations and omissions with the intent to deceive Lickteig and to induce him to sell his Profit Interests for inadequate consideration. The fact that the Valuation provided to Lickteig was at odds with Defendants' own contemporaneous internal documents, projections and expectations demonstrates Defendants' conscious misbehavior or recklessness. This conclusion is independently confirmed by Jim Lenehan's express hope that "negotiations [with] former mgmt. ha[d] concluded" in advance of negotiations to sell Covis Holdings or its assets to third party buyers. Furthermore, Defendants each had a motive and opportunity to commit fraud insofar as inducing Lickteig to sell his Profit Interests for inadequate consideration permitted Defendants to receive the economic benefits of those same interests.

54.    Defendants' fraud occurred in connection with the purchase or sale of a security insofar as Defendants' fraudulent misrepresentations and omissions induced Lickteig to sell the Profit Interests.

55.    Lickteig reasonably relied on Defendants' Valuation.

56.    As a direct and proximate result of Lickteig's reasonable reliance on Defendants' Valuation, he sold his Profit Interest at an artificially low price, thus causing him economic loss in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
For Control Person Liability under § 20(a) of the Exchange Act
*Against Defendants Cerberus and Covis Holdings*

57. Lickteig repeats and realleges the preceding paragraphs of his Complaint as if fully set forth herein.

58. Cerberus effectively owned and controlled each of Covis Holdings, Covis Pharma and Covis Management, as well as non-party Covis S.á.r.l. For example, Cerberus was the general partner of Covis Holdings and deployed its own agents to oversee operations at both Covis Pharma and its affiliate, Covis S.á.r.l. Furthermore, Covis agents or executives comprised the majority of the board of managers at both Covis Holdings and Covis Management. Cerberus, Covis Holdings, Covis Pharma, Covis Management and Covis S.á.r.l. were thus a fully integrated entity.

59. Cerberus and Covis Holdings are, or were, directly or indirectly, control persons of Covis Management, Covis Pharma and Mitchell for the purposes of Section 20(a) of the Exchange Act.

60. Cerberus and Covis Holdings owned, dominated and controlled the entities and individuals responsible for the material misstatements and omissions to Lickteig.

61. As control persons, Cerberus and Covis Holdings are jointly and severally liable with and to the same extent as the controlled entities and individuals—Covis Management, Covis Pharma, Mitchell and, in the case of Cerberus, Covis Holdings—for their violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**THIRD CAUSE OF ACTION**
For Violation of the Iowa Uniform Securities Act IA ST § 502.509(3)
*Against All Defendants*

62. Lickteig repeats and realleges the preceding paragraphs of his Complaint as if fully set forth herein.

63. The Profit Interests are securities within the meaning of the Iowa Uniform Securities Act.

64. Lickteig is a resident of the state of Iowa as set forth above, and as a seller of a security in Iowa is covered by the Iowa Uniform Securities Act.

65. Defendants purchased Lickteig's Profit Interests in violation of the Iowa Securities Act (IA ST 502.509(3)) by knowingly, intentionally and negligently making misrepresentations and omissions of material facts necessary to make Defendants' Valuation of Lickteig's Profit Interests not misleading.

66. Defendants intentionally and knowingly made material misstatements and omissions to Lickteig concerning the value of his Profit Interests by, among other things:

    a. Misrepresenting Covis Holdings' estimated adjusted EBITDA for 2014;

    b. On information and belief, failing to disclose that, in June 2014, Defendants valued Covis Holdings' pharmaceutical products at $750 million to $1 billion—far higher than the TEV that Defendants represented to Lickteig;

    c. On information and belief, materially misrepresenting Covis Holdings' actual adjusted EBITDA for 2013;

    d. Misrepresenting the appropriate EBITDA multiple to apply to Covis Holdings for purposes of the Valuation; and

    e. Omitting material facts concerning Defendants' likely sale of Covis Holdings or its assets.

67. On information and belief, Defendants made these misrepresentations and omissions with the intent to deceive Lickteig and to induce him to sell his Profit Interests for inadequate consideration. The fact that the Valuation provided to Lickteig was at odds with

Defendants' own contemporaneous internal documents, projections and expectations demonstrates Defendants' conscious misbehavior or recklessness. This conclusion is independently confirmed by Jim Lenehan's express hope that "negotiations [with] former mgmt ha[d] concluded" in advance of negotiations to sell Covis Holdings or its assets to third party buyers.  Furthermore, Defendants each had a motive and opportunity to commit fraud insofar as inducing Lickteig to sell his Profit Interests for inadequate consideration permitted Defendants to receive the economic benefits of those same interests.

68. Defendants' misrepresentations and omissions were, at a minimum, negligent insofar as Defendants knew or should have known that their statements and omissions were misleading.

69. Defendants' fraud occurred in connection with the purchase or sale of a security insofar as Defendants' fraudulent misrepresentations and omissions induced Lickteig to sell the Profit Interests.

70. Lickteig reasonably relied on Defendants' Valuation.

71. As a direct and proximate result of Lickteig's reasonable reliance on Defendants' Valuation, he sold his Profit Interest at an artificially low price, thus causing him economic loss in an amount to be determined at trial.

72. Lickteig did not know, and in the exercise of reasonable care, could not have known of Defendants' untruths and omissions.

**FOURTH CAUSE OF ACTION**
For Control Person Liability under Iowa Uniform Securities Act IA ST § 502.A7
*Against Defendants Cerberus and Covis Holdings*

73. Lickteig repeats and realleges the preceding paragraphs of his Complaint as if fully set forth herein.

74. Cerberus effectively owned and controlled each of Covis Holdings, Covis Pharma and Covis Management, as well as non-party Covis S.á.r.l. For example, Cerberus was the general partner of Covis Holdings and deployed its own agents to oversee operations at both Covis Pharma and its affiliate, Covis S.á.r.l. Furthermore, Covis agents or executives comprised the majority of the board of managers at both Covis Holdings and Covis Management. Cerberus, Covis Holdings, Covis Pharma, Covis Management and Covis S.á.r.l. were thus a fully integrated entity.

75. Cerberus and Covis Holdings are, or were, directly or indirectly, control persons of Covis Management, Covis Pharma and Mitchell for the purposes of IA ST § 502.A7.

76. Cerberus and Covis Holdings owned, dominated and controlled the entities and individuals responsible for the material misstatements.

77. As control persons, Cerberus and Covis Holdings are jointly and severally liable with and to the same extent as the controlled entities and individuals—Covis Management, Covis Pharma, Mitchell and, in the case of Cerberus, Covis Holdings—for their violations of for their violations of the Iowa Securities Act (IA ST 502.509(3)).

**PRAYER FOR RELIEF**

WHEREFORE, Lickteig demands judgment:

a. Awarding Lickteig damages and/or equitable remedies in an amount to be determined at trial, but no less than $4.5 million;

b. Awarding Lickteig punitive damages in an amount to be determined at trial;

c. Awarding Lickteig pre-judgment interest on any recovery;

    d.    Awarding Lickteig his costs, expenses and disbursements, including his reasonable attorney fees as determined by the Court pursuant to IA ST § 502.509(3)(c); and

    e.    Granting Lickteig such other and further relief as the Court deems just and proper.

Dated: June 4, 2019
        New York, New York

KAPLAN RICE LLP

By: /s/ Joseph A. Matteo
Joseph A. Matteo
142 West 57th Street Suite 4A
New York, New York 10019
(212) 235-0300 (telephone)
(212) 235-0301 (facsimile)

*Attorneys for Ronald Lickteig*