UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/22/2020
```

-------------------------------------------------------------------X

RONALD LICKTEIG,                              :
                                              :
                              Plaintiff,      :
                                              :          1:19-cv-5263-GHW
             -against-                        :
                                              :          MEMORANDUM OPINION
                                              :          AND ORDER
CERBERUS CAPITAL MANAGEMENT, L.P.,            :
COVIS PHARMACEUTICALS, INC., COVIS            :
MANAGEMENT INVESTORS LLC, and COVIS           :
HOLDINGS, L.P.,                               :
                                              :
                              Defendants.     :

-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

Plaintiff Ronald Lickteig seeks to amend his securities fraud complaint to add factual

allegations based on information gleaned from documents produced in discovery in an unrelated

action. While Plaintiff's counsel also represented the plaintiffs in the unrelated action, his

knowledge of the documents that form the basis of Plaintiff's proposed amendment is not imputed

to Plaintiff because counsel did not begin his representation of Plaintiff until months after he

discovered the documents. As a result, Plaintiff only became aware of those documents a week

before he filed his motion to amend his complaint. He was therefore diligent in filing his motion.

Because Plaintiff was diligent, and because Defendants will not be unduly prejudiced by the

amendment and the amendment would not be futile, Plaintiff's motion for leave to amend his

complaint is GRANTED.

## I.      BACKGROUND

The Court detailed the factual and procedural history of this case in *Lickteig v. Cerberus Capital*

*Management, L.P. et al.* ("*Lickteig I*"), No. 19-cv-5263-GHW, Dkt. No. 40, at *2–9 (S.D.N.Y. Apr. 26,

2020).[1]  The Court assumes the reader's familiarity with that opinion, and as such it does not detail

all of that history again here.  In short, Plaintiff alleges that Defendants made false or misleading

statements in connection with the valuation of the equity of Defendant Covis Holdings, L.P.

("Covis Holdings").  Plaintiff alleges that, following his resignation from his position at Defendant

Covis Pharmaceuticals Inc., those false or misleading statements induced him to accept less for his

equity than it was worth.  Defendants filed a motion to dismiss on September 20, 2019.  Dkt. Nos.

34.  On April 26, 2020, the Court found that Plaintiff had adequately pleaded a claim for securities

fraud and control person liability with respect to two statements related to the valuation—one

regarding the "TEV/EBITDA" multiple used in the valuation and another regarding Covis

Holdings' projected Adjusted EBITDA for 2014.  *Lickteig I* at 19–22.

　　However, the Court found that several other statements did not form the basis of a

securities fraud claim.  As relevant here, the Court found that "Lickteig's allegation that Covis

Holdings Adjusted EBITDA for 2013 was higher than $62.2 million cannot serve as the basis for a

securities fraud claim."  *Lickteig I* at 17.  Lickteig had pleaded on "information and belief" that the

2013 Adjusted EBITDA was actually "millions of dollars higher than the $62.2 million reported to

Lickteig in the Valuation."  Compl., Dkt. No. 1, ¶ 40.  But the Court dismissed Plaintiff's claim

based on Defendants' statement regarding the 2013 Adjusted EBITDA "because Lickteig has failed

to allege the particularized facts upon which his 'information and belief' rests."  *Lickteig I* at 17.

　　After the Court's decision in *Lickteig I*, the Court entered a case management plan and

scheduling order on June 4, 2020.  Dkt. No. 44.  It provided that "[a]ny motion to amend or to join

additional parties shall be filed within 30 days from the date of this order," *id.* at 2, so any motion to

amend was due no later than July 4, 2020.  Plaintiff's counsel, Mr. Seifert, was retained by Plaintiff in

June 2020.  Declaration of Joshua L. Seifert dated August 24, 2020 ("Seifert Decl."), Dkt. No. 55,

---

[1] Unless defined herein, all defined terms have the meaning assigned in *Lickteig I.*

¶ 9.  He filed a notice of appearance on June 23, 2020.  Dkt. No. 46.  The deadline to file a motion to amend or join additional parties expired less than two weeks later; Plaintiff filed no motion by the deadline.

But on August 24, 2020, Plaintiff filed a motion for leave amend the scheduling order and to amend his complaint.  Dkt. No. 53.  The substantive allegations Plaintiff seeks to add in his amended complaint (the "Proposed Amended Complaint") concern presentations given to Impax Laboratories, Inc. ("Impax") that allegedly show that Defendants misrepresented Covis Holdings' 2013 Adjusted EBITDA and its estimated 2014 Adjusted EBITDA.[2]  *See* Proposed Amended Complaint, Dkt. No. 55-1, ¶¶ 41–46.  In the presentations, a subsidiary of Defendant Covis Holdings told Impax that the 2013 Adjusted EBITDA and estimated 2014 Adjusted EBITDA were approximately $16 million and $30 million higher than stated in the valuation provided to Plaintiff, respectively.  *Id.*  The presentations were given to Impax in the same month in which the valuation was given to Plaintiff.  *Id.* ¶¶ 41, 44.  Plaintiff argues that these allegations remedy his failure to plead any particularized basis on which he rested his allegation that the 2013 Adjusted EBITDA figure provided to Plaintiff was misleading, which was the reason the Court found that Defendants' statement regarding the 2013 Adjusted EBITDA was not actionable.

These new allegations are based on a five-document production from Impax (the "Impax Production") in a separate litigation, *Brown, et al. v. Cerberus Capital Management, L.P., et al.*, Index No. 655271/17 (N.Y. Sup. Ct. N.Y. Cty.) (the "*Brown* Action").  On January 10, 2020, Impax produced the documents to the *Brown* plaintiffs.  Seifert Decl. ¶ 8.  Plaintiff's counsel, Mr. Seifert, also represents the plaintiffs in the *Brown* Litigation.  *Id.* ¶ 7.  Mr. Seifert forwarded the documents to

---

[2] The Proposed Amended Complaint also deletes references to Dean Mitchell.  The claims against Mr. Mitchell were dismissed in *Lickteig I*.

opposing counsel in the *Brown* Action on January 14, 2020.  Declaration of Sheila A. Sadighi dated September 8, 2020 ("Sadighi Decl."), Dkt. No. 65, Ex. E.

On August 17, 2020, while preparing for a deposition in the *Brown* Action, Mr. Seifert "came across" the documents that form the basis of Plaintiff's proposed amendment.  Seifert Decl. ¶ 10. He then disclosed the information to Plaintiff.  *Id.* ¶ 11.  Plaintiff in this case filed his motion for leave to amend his complaint a week later.  Defendants filed their opposition on September 8, 2020, Dkt. No. 64 ("Opp."), and Plaintiff filed his reply on September 15, 2020.  Dkt. No. 67 ("Reply").

## II.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within 21 days of serving it or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).  After that point, absent written consent from the opposing party, a party must obtain leave to amend from the district court. Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) provides that courts "should freely give leave when justice so requires."  "Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party."  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see also id.* ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

The burden on a party seeking to amend the pleadings is heavier where the court, as here, has entered a case management order.  *See* Dkt. No. 44.  At that point, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("Several circuits have ruled that the Rule

4

16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings. . . .  We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.").

In determining whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  "[T]he moving party must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, and that despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Lee v. Kylin Management LLC*, No. 17-cv-7249 (JMF), 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019) (citation and quotation marks omitted).  "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610, 626 (S.D.N.Y. 2018) (citing *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012)).  But diligence is not the only consideration.  "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the opposing party]." *Kassner*, 496 F.3d at 244.

### III.   ANALYSIS

Plaintiff has established good cause for amending the case management plan and scheduling order, which required that motions for leave to amend be filed by July 4, 2020.  He has demonstrated that he was diligent in bringing his motion for leave to amend because he did not become aware of the Impax Production until August 17, 2020.  And the proposed amendment is

neither prejudicial to Defendants nor futile.[3]  As a result, Plaintiff's motion for leave to amend his

complaint is granted.

a. **Diligence**

Plaintiff was diligent in bringing this motion because he could not reasonably have filed it

before the July 4, 2020 deadline for filing motions for leave to amend or join additional parties.  *See*

*Lee*, 2019 WL 917097, at *1.  He did not know, nor should he have known, the information giving

rise to the amendment in advance of the deadline.  *See Alaska Elec. Pension Fund*, 306 F. Supp. 3d at

626 ("A party fails to show good cause when the proposed amendment rests on information that the

party knew, or should have known, in advance of the deadline.").  Plaintiff's counsel came across the

Impax Production on August 17, 2020 and disclosed it to Plaintiff shortly thereafter.  One week

later, on August 24, 2020, Plaintiff filed his motion for leave to amend his complaint.  Dkt. No. 53.

Plaintiff learned of the information on which the proposed amendment is based well after the

amendment deadline and he promptly brought filed this motion once he did.  Therefore, Plaintiff

has demonstrated that he was diligent in bringing his motion for leave to amend.

Plaintiff's counsel possessed the information on which the proposed amendment rests in

advance of the deadline for motions to amend—he received the Impax Production in January 2020.

But that knowledge, obtained before Plaintiff had retained him, is not imputed to Plaintiff.  "A

principal is not charged with his agent's knowledge obtained before he became an agent . . . unless

the information was in the agent's mind when he acted for the principal on the occasion under

scrutiny."  *Phelan v. Middle States Oil Corp.*, 210 F.2d 360, 365–66 (2d Cir. 1954); *see also JBGR, LLC v.*

*Chicago Title Ins. Co.*, 11 N.Y.S.3d 83, 86 (2d Dep't 2015) ("[T]he knowledge of an agent can be

charged to the principal only when clear proof is made that the knowledge was present in the agent's

mind at the time of the transaction which is the subject of consideration by the court.") (alterations

---

[3] Nor do Defendants argue the motion was made in bad faith.

omitted) (quoting *Slattery v. Schwannecke,* 118 N.Y. 543, 548 (1890)). Plaintiff argues that Mr. Seifert "did not become cognizant of the Impax Production again until August 17, 2020," Reply at 3, when he "came across" the production again. Seifert Decl. ¶ 10. Until that point, nothing indicates that the information contained in the Impax Production that forms the basis of the proposed amendment was in Mr. Seifert's mind while acting on behalf of Plaintiff.

The Impax Production was produced in the *Brown* Action on January 10, 2020, *id.* at ¶ 8, five months before Mr. Seifert was retained by Plaintiff in this action. As recognized by Defendants, the *Brown* Action is unrelated to this case. And as explained by the Court in *Lickteig I*:

> [T]he *Brown* plaintiffs relied on different alleged misstatements and different theories of fraud. The *Brown* plaintiffs relied on two theories of fraud. The first theory of fraud was based on a set of "'extra-contractual' statements" by two individuals who were named as defendants in *Brown* but are not named as defendants in this lawsuit. The second theory of fraud was that Defendants terminated them in bad faith to prevent their profit interests from vesting. These claims—and the facts the *Brown* plaintiffs alleged in their complaint in support of them—have nothing to do with Lickteig's allegations in this case.

*Lickteig I* at 25 (citations omitted). Given these differences between the cases, Mr. Seifert's focus in reviewing the documents produced in *Brown* would not necessarily have been on the facts pertinent to Plaintiff's case. Plaintiff represents—albeit without citation—that roughly 17,000 documents were produced in the *Brown* Litigation. Reply at 4. It is entirely unsurprising the Mr. Seifert did not realize the import of the EBITDA information contained in the five-document Impax Production to Plaintiff's case until he re-reviewed the documents on August 17, 2020. The Court cannot conclude that the information from the Impax Production "was in the agent's mind when he acted for the principal"—that is, that it was in Mr. Seifert's mind while representing Plaintiff—earlier. As a result, knowledge of EBITDA information in the Impax Production is not imputed to Plaintiff prior to August 17, 2020. Therefore, Plaintiff could not have reasonably met the amendment deadline provided in the scheduling order. Plaintiff has established that he was diligent in bringing his motion for leave to amend.

### b. Undue Prejudice

Defendants will not be unduly prejudiced if Plaintiff is granted leave to add factual allegations to his complaint at this stage of the litigation. "Although prejudice to the opposing party has been described as the most important reason for denying a motion to amend, only <u>undue</u> prejudice warrants denial of leave to amend." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (emphasis in original) (citations and internal quotation marks omitted); *see also A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) ("[P]rejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is *'undue* prejudice to the opposing party.'") (emphasis in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "To determine whether the proposed amendment will cause undue prejudice, courts 'generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, No. 18-cv-4273 (PMH)(JCM), 2020 WL 5089444, at *3 (S.D.N.Y. Aug. 28, 2020) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). "Central to this analysis is the extent to which the new claims arise from the existing ones and whether a party had prior notice of the new claim." *Id.* Here, the proposed amendment would not unduly prejudice Defendants because it pleads additional factual allegations on which Plaintiff bases his claim for securities fraud in connection with the statements contained in the valuation provided to Lickteig, rather than adding entirely new claims or defendants.

The amendment would not significantly delay the resolution of this case because the Court recently extended fact discovery through March 1, 2021 and expert discovery through April 19, 2021. Dkt. No. 90. And the amendment would not significantly alter the scope of this case,

particularly because "the addition of new claims or affirmative defenses has the potential for greater interruption to the litigation than new factual details." *CAC Atl., LLC v. Hartford Fire Ins. Co.*, No. 1:16-cv-5454 (GHW), 2017 WL 3149340, at *3 n.4 (S.D.N.Y. July 25, 2017). The Court has already determined that Plaintiff adequately stated a claim for fraud in connection with two statements made in the valuation. Adding a third statement, the previously dismissed statement regarding the 2013 Adjusted EBITDA, will not drastically affect the contours of this case such that Defendants would have to expend significant additional resources to conduct discovery and prepare for trial. In any event, "[t]he adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.,* 889 F.2d 1248, 1255 (2d Cir. 1989). Moreover, "[t]he need for additional motion practice and trial preparation is not sufficient to constitute undue prejudice." *Cmty. Ass'n Underwriters of Am.,* 2020 WL 5089444, at *4. Therefore, Plaintiff's proposed amendment would not unduly prejudice Defendants.

Defendants argue that they suffer prejudice because Plaintiff's counsel violated the confidentiality order in the *Brown* Action ("*Brown* Confidentiality Order") by disclosing information from the Impax Production to Plaintiff in this case because the confidentiality order in *Brown* forbids use of the documents other than in the *Brown* Action. Plaintiff raises strong arguments that the Impax Production was not designated as confidential under the *Brown* Confidentiality Order. [4]

---

[4] In 2014, the documents were provided by Covis to Impax under a confidentiality agreement. Sadighi Decl., Ex C. But that appears to be insufficient to designate a document as confidential under the *Brown* Confidentiality Order, which allows parties and non-parties "designate Documents produced . . . in connection with this action as 'Confidential,' either by notation on each page of the Document so designated . . . or written advice to the respective undersigned counsel for the Parties hereto, or by other appropriate means." *Brown* Confidentiality Order, Sadighi Decl., Ex. F, ¶ 2. When Impax produced the documents in the *Brown* Action on January 10, 2020, it did not designate them as confidential. Reply Declaration of Joshua L. Seifert dated September 15, 2020 ("Seifert Reply Decl."), Dkt. No. 68, ¶ 8 ("Neither Impax nor Defendants designated any documents in the Impax Production as 'Confidential' pursuant to the terms of the *Brown* Confidentiality Order at any time."); *see also* Seifert Reply Decl., Ex. A (letter producing the Impax Production in the *Brown* Action and remaining silent on confidentiality); Sadighi Decl., Ex. D (cover page to an Impax Production presentation displaying "Private & Confidential" in the header of the underlying document but bearing no confidentiality stamp in the footer, where the Bates stamp is located).

Nonetheless, it is not the Court's role to determine whether the parties in *Brown* breached the *Brown* Confidentiality Order—the court in the *Brown* Action can entertain any assertion of such a breach. Regardless of whether the *Brown* Confidentiality Order was breached, Defendants have not shown that they would be unduly prejudiced by the use of documents produced in the *Brown* Action to form the factual predicate for an amendment in this action.  If Defendants were harmed as a result of a violation of the confidentiality order in *Brown*, they can seek appropriate relief from that court. That avenue of redress is available to mitigate any prejudice resulting from a violation of the *Brown* confidentiality order.

Defendants' remaining arguments regarding prejudice also fail because they mischaracterize the use of the Impax Production in the Proposed Amended Complaint.  Plaintiff does not seek to use the documents obtained in *Brown* discovery.  Instead, those documents supplied the information that formed the basis of the substantive amendments included in the Proposed Amended Complaint.  Thus, it is not the case that this is an end-run around the Court's previous ruling barring the wholesale importation of *Brown* discovery into this action.

And it is also not the case that, as Defendants argue, permitting the amendment would run afoul of the policies underlying the PSLRA by permitting information obtained in discovery to be used to amend the complaint, despite the PSLRA's discovery stay.  There is not a categorical bar on amending PSLRA complaints.  *See, e.g., In re Pfizer Inc. Sec. Litig.*, No. 04-cv-9866 (LTS)(HBP), 2012 WL 983548, at *2–3 (S.D.N.Y. Mar. 22, 2012) (granting leave to amend PSLRA complaint using information obtained during discovery and noting that "[c]ourts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery"); *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) ("If a private securities case proceeds past the pleadings stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants."); *In re Silver*

*Wheaton Corp. Sec. Litig.,* No. 2:15-cv-5146 (CAS), 2018 WL 1517130, at *6 (C.D. Cal. Mar. 26, 2018) (granting leave to amend PSLRA complaint to add a defendant); *In re Constellation Energy Grp., Inc. Sec. Litig.*, No. CCB-08-02854, 2012 WL 1067651, at *3 (D. Md. Mar. 28, 2012) (rejecting argument that "that the PSLRA prohibits plaintiffs from using information obtained through discovery to revive previously dismissed claims"). Defendants do not argue there is such a bar.

Instead, Defendants rely on two decisions in which Judge Rakoff denied the plaintiffs leave to use information obtained in discovery to amend their complaint to reinstate claims that had previously failed to survive a motion to dismiss. *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR), 2016 WL 3144395, at *3 (S.D.N.Y. May 5, 2016); *In re BISYS Sec. Litig.*, 496 F. Supp. 2d 384, 387 (S.D.N.Y. 2007)[5]. Judge Rakoff noted, "Congress enacted the PSLRA to filter out potential strike suits. Instrumental to achieving this objective was imposition of more stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court. Thus, the PSLRA effectively shifted the burden to plaintiffs to acquire particularized knowledge of a party's scienter prior to obtaining discovery." *Petrobas*, 2016 WL 3144395, at *3 (internal citations and quotation marks omitted). Because the plaintiffs had failed to meet that burden initially, Judge Rakoff found that permitting them to use information obtained in discovery to resuscitate their claims would defeat the policy of the PSLRA. *Id.*; *BISYS*, 496 F. Supp. 2d at 387. Even accepting the principle established in Judge Rakoff's decisions, there are meaningful distinctions between those cases and this one. Here, it is not discovery from this case that inspires the amendment, rather, it is information known to counsel from an independent source—the discovery produced in *Brown*. Moreover, the amendment that is proposed does not raise a new claim or add a new defendant. Instead, the additional facts add detail to a claim that was advanced in the original complaint and

---

[5] Though the plaintiffs in *BISYS* sought leave to amend under Fed. R. Civ. P. 15, the motion was decided under Fed. R. Civ. P. 54.

that, in part, survived a motion to dismiss. In this context, concerns about an end-run around the PSLRA are mitigated.

### c. Futility

The proposed amendment is not futile. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). First, some of the new proposed allegations concern the 2014 projected Adjusted EBITDA. The Court has already found that Defendants' statements regarding the Adjusted EBITDA for 2014 are actionable. *Lickteig I* at 21–22. Adding new factual allegations about that statement, which has already survived a motion to dismiss, is not futile.

Second, the proposed amendments regarding 2013 Adjusted EBITDA are not futile because they directly remedy the deficiency on which the Court founded its determination that statements about the company's 2013 Adjusted EBITDA were not actionable. The Court found that "this statement cannot serve as a basis for securities fraud liability" because Lickteig failed to allege particularized facts upon which his information and belief that "Covis Holdings' actual adjusted EBITDA for 2013 was millions of dollars higher than the $62.2 million reported to Lickteig in the Valuation." *Lickteig I* at 17. The proposed amendments would provide particularized facts on which that belief is based. They allege that, in the same month the valuation was provided to Lickteig with a 2013 Adjusted EBITDA of $62.2 million, Covis Holdings' 2013 Adjusted EBITDA was represented to be $78.5 million in two separate presentations. That is an adequate particularized basis on which Plaintiff can plead that the actual 2013 Adjusted EBITDA was millions of dollars higher than the figure provided to Lickteig in the valuation. Therefore, the deficiency identified in *Lickteig I* has been cured. Defendants argue that the adjusted EBITDA "[b]ecause adjusted EBITDA depends on subjective determinations as to what adjustments to EBITDA are made,

12

adjusted EBITDA is not a statement of fact, and Plaintiff would have to show evidence of a subjective disbelief by Defendants at the time such statement was made in order to make out a securities fraud claim." Opp. at 15. But even accepting Defendants' premise, considering that two wildly different EBITDA figures were presented about the same entity in the same month, a reasonable jury could infer a subjective disbelief of the figure provided to Lickteig. Drawing all reasonable inferences in favor of Plaintiff, as the Court must on a motion to dismiss, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam), the Proposed Amended Complaint pleads particularized facts that give rise to a strong inference that Defendants believed the actual 2013 Adjusted EBITDA was $16 million higher than they represented it was to Lickteig. Therefore, the proposed amendment is not futile.

## IV.   CONCLUSION

Plaintiff's motion for leave to amend his complaint is GRANTED. Defendants' request for costs under Fed. R. Civ. P. 16(f) is denied because Plaintiff has not failed to obey a scheduling order—he sought and received permission to modify the scheduling order.

Plaintiff is directed to file his amended complaint within seven days of the date of this order. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 53.

SO ORDERED.

Dated: December 21, 2020

_____
GREGORY H. WOODS
United States District Judge

13